IN THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
DEC 16 2003
BY DEPUTY

ROBERT JAMES NANCE,

Plaintiff,

v.

WYETH; BAYER CORPORATION; PFIZER, INC., WARNER LAMBERT CONSUMER HEALTHCARE; **A through G**, being those unknown individuals, partnerships, corporations, or other entities whether singular or plural who or which designed, tested, manufactured, marketed, advertised, distributed and/or sold drug(s) which contained PPA and was ingested by the Plaintiff on the occasions made the basis of this suit; **H through N**, being those unknown individuals, partnerships, corporations, or other entities who provided consulting services about the use of PPA in products designed, tested manufactured, marketed, advertised, distributed and/or sold by other Defendants in this action; **O through R**, being those unknown individuals, partnerships, corporations, or other entities who provided recommendations for the designers, testers, manufacturers, advertisers, distributors and/or sellers of drug(s) which contained PPA and was ingested by the Plaintiff on the occasions make the basis of this suit; **S through V**, being those unknown individuals, partnerships, corporations, or other entities whether singular or plural who provided design criteria, testing services, manufacturing criteria, advertising services, distributing services, and/or sales services for the designers, testers, manufacturers, advertisers, distributors and/or sellers of drug(s) which contained PPA and was ingested by the Plaintiff on the occasions make the basis of this suit; **W through EE** being those unknown individuals, partnerships, corporations, or other entities whether singular or plural and/or those entities or entity on whose behalf or whose benefit the named fictitious party Defendant or Defendants were acting on the occasions made the basis of this suit and/or those entities or entity who or which injured or contributed to the injuries of the Plaintiff. Plaintiff avers that the identity of the fictitious party Defendants are otherwise unknown to the Plaintiff at the time but whose identities will be added by amendment hereto when that information is ascertained,

Defendants.

§ § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § §

CASE NO. 1:03CV937GRO

04-CV-00394-DOCTRM

25364311.1



3

## ANSWER AND DEFENSES OF BAYER CORPORATION

Defendant Bayer Corporation ("Bayer") answers Plaintiff's Complaint and allegations directed towards Bayer as follows. The subheadings in Plaintiff's Complaint are included to facilitate review and are no way an admission to the allegations contained in each.

### Parties

1. In answer to paragraph 1, Bayer states that it lacks knowledge and information sufficient to form a belief as to the truth of the allegations asserted and, therefore, denies the allegations contained therein.

2. In answer to paragraph 2, Bayer states that paragraph 2 contains no allegations directed at Bayer and therefore, no answer is required by Bayer. To the extent an answer is deemed necessary, Bayer lacks knowledge and information sufficient to form a belief as to the truth of the allegations asserted and, therefore, denies the allegations contained therein.

3. In answer to paragraph 3, Bayer admits that it is an Indiana corporation with its principal place of business in Pittsburgh, Pennsylvania. Bayer further admits that at certain times prior to November 6, 2000 it manufactured, promoted, marketed and sold non-prescription, over-the-counter medicines containing phenylpropanolamine ("PPA") for use in accordance with its labeling in Mississippi under the name *Alka-Seltzer Plus Effervescent* medicine. Except as admitted, Bayer denies the allegations in paragraph 3.

4. In answer to paragraph 4, Bayer states that paragraph 4 contains no allegations directed at Bayer and therefore, no answer is required by Bayer. To the extent an answer is deemed necessary, Bayer lacks knowledge and information sufficient to form a belief as to the truth of the allegations asserted and, therefore, denies the allegations contained therein.

5. In answer to paragraph 5, and all its subparts, Bayer states that paragraph 5 contains allegations directed at parties other than Bayer, hence Bayer lacks knowledge and

information sufficient to form a belief as to the truth of the allegations asserted and, therefore, denies the allegations contained therein. Bayer denies the remaining allegations.

6. In answer to paragraph 6, Bayer states that paragraph 6 contains no allegations directed at Bayer and therefore, no answer is required by Bayer. To the extent an answer is deemed necessary, Bayer states that portions of Plaintiff's Complaint refer to Defendants and Defendants' PPA-containing medicines collectively. Bayer lacks knowledge and information sufficient to form a belief as to the truth of the allegations asserted regarding any and all other Defendants in this suit and, therefore, Bayer denies the allegations contained therein wherever they appear.

**Factual Allegations**

1. In answer to paragraph 1, Bayer admits that at certain times prior to November 6, 2000 it manufactured, promoted, marketed and sold non-prescription, over-the-counter medicines containing phenylpropanolamine ("PPA") for use in accordance with its labeling in Mississippi under the name *Alka-Seltzer Plus Effervescent* medicine. Bayer further states that to the extent allegations in paragraph 1 are directed at other defendants, Bayer lacks knowledge and information sufficient to form a belief as to the truth of such allegations and therefore, denies the allegations contained therein. Except as admitted, Bayer denies the allegations contained in paragraph 1.

2. In answer to paragraph 2, Bayer admits that PPA is a chemical and that it is a member of a class of substances known as sympathomimetic amines. Bayer further admits that its PPA-containing medicines were designed, manufactured, marketed, advertised, distributed, and sold by Bayer, and were intended to function, as safe for use as over-the-counter nasal decongestant medicines when used in accordance with their labeling. Except as admitted, Bayer denies the remaining allegations.

3. Bayer denies the allegations contained in paragraph 3. Because Plaintiff has failed to specifically identify the published case reports or the medical literature referred to in paragraph 3, Bayer lacks knowledge and information sufficient to form a belief as to the truth of such allegations and therefore denies them.

4. In answer to paragraph 4, Bayer states that with regard to reports made to the FDA, it lacks sufficient knowledge and information to form a belief as to the truth of the allegations and therefore, denies the allegations contained therein. Bayer denies the remaining allegations in paragraph 4.

5. In answer to paragraph 5, Bayer admits that on March 9, 1993, the FDA issued a letter to the NDMA which speaks for itself. Except as admitted, Bayer denies the allegations contained in paragraph 5.

6. Bayer denies the allegations contained in paragraph 6. Bayer further states that to the extent allegations in paragraph 6 are directed at other defendants, Bayer lacks knowledge and information sufficient to form a belief as to the truth of such allegations and therefore, denies the allegations contained therein.

7. In answer to paragraph 7, Bayer admits that on December 21, 2000, the *New England Journal of Medicine* published an article entitled "Phenylpropanolamine And the Risk of Hemorrhagic Stroke" which speaks for itself. Except as admitted, Bayer denies the allegations contained in paragraph 7.

8. Bayer denies the allegations contained in paragraph 8. Because Plaintiff has failed to specifically identify the case reports or the medical literature referred to in paragraph 8, Bayer lacks knowledge and information sufficient to form a belief as to the truth of such allegations and therefore denies them.

9. Bayer denies the allegations contained in paragraph 9. Because Plaintiff has failed to specifically identify the evidence referred to in paragraph 9, Bayer lacks knowledge and information sufficient to form a belief as to the truth of such allegations and therefore denies them.

10. Bayer denies the allegations contained in paragraph 10. Further, Bayer states that at all times it has discharged its duty to warn in connection with the sale of its PPA-containing decongestant medications. Further, Bayer states that it always provided warnings consistent with FDA requirements with its PPA-containing decongestant medications.

11. In answer to paragraph 11, Bayer admits that its PPA-containing medicines were designed, manufactured, marketed, advertised, distributed, and sold by Bayer, and were intended to function, as safe for use as over-the-counter nasal decongestant medicines when used in accordance with their labeling. Except as admitted, Bayer denies the remaining allegations.

12. In answer to paragraph 12, Bayer admits that its PPA-containing medicines were designed, manufactured, marketed, advertised, distributed, and sold by Bayer, and were intended to function, as safe for use as over-the-counter nasal decongestant medicines when used in accordance with their labeling. Further, Bayer states that it always provided warnings consistent with FDA requirements with its PPA-containing decongestant medications. Bayer further states that to the extent allegations in paragraph 12 are directed at other defendants, Bayer lacks knowledge and information sufficient to form a belief as to the truth of such allegations and therefore, denies the allegations contained therein. Except as admitted, Bayer denies the remaining allegations in paragraph 12.

13. In answer to paragraph 13, Bayer admits that its PPA-containing medicines were designed, manufactured, marketed, advertised, distributed, and sold by Bayer, and were intended to

function, as safe for use as over-the-counter nasal decongestant medicines when used in accordance with their labeling. Except as admitted, Bayer denies the remaining allegations.

14. In answer to paragraph 14, Bayer responds that to the extent paragraph 14 regards plaintiff's state of mind when and if he consumed *Alka-Seltzer Plus Effervescent* medicine, Bayer lacks knowledge or information sufficient to form a belief as to the truth thereof and, therefore, denies the allegations. Bayer denies the remaining allegations.

15. In answer to paragraph 15, Bayer states that it lacks knowledge and information sufficient to form a belief as to the truth of the allegations asserted and, therefore, denies the allegations contained therein.

16. In answer to paragraph 16, Bayer denies the allegations contained therein.

**COUNT ONE**

**STRICT LIABILITY**

17. In answer to paragraph 17, Bayer incorporates by reference, as if fully set forth herein, paragraphs 1 through 16 of this Answer.

18. Bayer denies the allegations contained in paragraph 18. To the extent that paragraph 18 contains allegations directed at parties other than Bayer, Bayer lacks knowledge and information sufficient to form a belief as to the truth of the matter asserted and therefore denies the allegations.

19. In answer to paragraph 19, Bayer states that in regard to the condition of the product when it reached Plaintiff, Bayer lacks knowledge and information sufficient to form a belief as to the truth of the matter asserted and therefore denies the allegations. Bayer lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations and therefore, denies the allegations contained therein.

20. In answer to paragraph 20, Bayer admits that its PPA-containing medicines were designed, manufactured, marketed, advertised, distributed, and sold by Bayer, and were intended to function, as safe for use as over-the-counter nasal decongestant medicines when used in accordance with their labeling. Bayer further states that to the extent allegations in paragraph 20 are directed at other defendants, Bayer lacks knowledge and information sufficient to form a belief as to the truth of such allegations and therefore, denies the allegations contained therein. Except as admitted, Bayer denies the allegations contained in paragraph 20.

21. Bayer denies the allegations contained in paragraph 21. Bayer further states that its *Alka-Seltzer Plus Effervescent* medicine did not contain ephedrine or caffeine. Bayer further states that to the extent allegations in paragraph 21 are directed at other defendants, Bayer lacks knowledge and information sufficient to form a belief as to the truth of such allegations and therefore, denies the allegations contained therein.

22. Bayer denies the allegations contained in paragraph 22.

23. Bayer denies the allegations contained in paragraph 23. Bayer further states that to the extent allegations in paragraph 23 are directed at other defendants, Bayer lacks knowledge and information sufficient to form a belief as to the truth of such allegations and therefore, denies the allegations contained therein.

24. Bayer denies the allegations contained in paragraph 24. Further, Bayer states that at all times it has discharged its duty to warn in connection with the sale of its PPA-containing decongestant medications. Bayer further states that to the extent allegations in paragraph 24 are directed at other defendants, Bayer lacks knowledge and information sufficient to form a belief as to the truth of such allegations and therefore, denies the allegations contained therein.

In answer to the demand portion of the Count One section of Plaintiff's Complaint, Bayer denies the allegations directed at Bayer contained therein and further denies that Plaintiff is entitled to any of the relief requested.

**COUNT TWO**

**(BREACH OF EXPRESS IMPLIED WARRANTIES)**

25. In answer to paragraph 25, Bayer incorporates by reference, as if fully set forth herein, paragraphs 1 through 24 of this Answer.

26. In answer to paragraph 26, Bayer admits that its PPA-containing medicines were designed, manufactured, marketed, advertised, distributed, and sold by Bayer, and were intended to function, as safe for use as over-the-counter nasal decongestant medicines when used in accordance with their labeling. Bayer further states that to the extent allegations in paragraph 26 are directed at other defendants, Bayer lacks knowledge and information sufficient to form a belief as to the truth of such allegations and therefore, denies the allegations contained therein. Except as admitted, Bayer denies the allegations contained in paragraph 26.

27. Bayer denies the allegations contained in paragraph 27. Furthermore, Bayer states that to the extent allegations in paragraph 27 are directed at other defendants, Bayer lacks knowledge and information sufficient to form a belief as to the truth of such allegations and therefore, denies the allegations contained therein. Bayer further states that at all times it has discharged its duty to warn in connection with the sale of its PPA-containing decongestant medications. Further, Bayer states that it always provided warnings consistent with FDA requirements with its PPA-containing decongestant medications.

28. Bayer denies the allegations contained in paragraph 28.

33. In answer to paragraph 33, Bayer reasserts each and every response to "Count Three" of Plaintiff's Complaint as if fully set forth herein.

In answer to the demand portion of "Count Four" section of Plaintiff's Complaint, Bayer denies the allegations directed at Bayer contained therein and further denies that Plaintiff is entitled to any of the relief requested.

**COUNT FIVE**

**(FRAUDULENT MISREPRESENTATION; SUPPRESSION; CONCEALMENT; AND DECEIT)**

34. In answer to paragraph 34, Bayer incorporates by reference, as if fully set forth herein, paragraphs 1 through 33 of this Answer.

35. In answer to paragraph 35, Bayer admits that, subject to any applicable defenses, Bayer had a duty to comply with applicable law, which it did. Bayer further states that at all times it has discharged its duty to warn in connection with the sale of its PPA-containing decongestant medications. Bayer further states that to the extent allegations in paragraph 35 are directed at other defendants, Bayer lacks knowledge and information sufficient to form a belief as to the truth of such allegations and therefore, denies the allegations contained therein. Except as admitted, Bayer denies the allegations contained in paragraph 35.

36. In answer to paragraph 36, Bayer admits that its PPA-containing medicines were designed, manufactured, marketed, advertised, distributed, and sold by Bayer, and were intended to function, as safe for use as over-the-counter nasal decongestant medicines when used in accordance with their labeling. Except as admitted, Bayer denies the allegations contained in paragraph 36.

37. In answer to paragraph 37, Bayer admits that its PPA-containing medicines were designed, manufactured, marketed, advertised, distributed, and sold by Bayer, and were intended to

function, as safe for use as over-the-counter nasal decongestant medicines when used in accordance with their labeling. Bayer further states that to the extent allegations in paragraph 37 are directed at other defendants, Bayer lacks knowledge and information sufficient to form a belief as to the truth of such allegations and therefore, denies the allegations contained therein. Except as admitted, Bayer denies the allegations contained in paragraph 37.

38. Bayer denies the allegations contained in paragraph 38. Bayer further states that to the extent allegations in paragraph 38 are directed at other defendants, Bayer lacks knowledge and information sufficient to form a belief as to the truth of such allegations and therefore, denies the allegations contained therein.

39. Bayer denies the allegations contained in paragraph 39.

In answer to the demand portion of "Count Five" section of Plaintiff's Complaint, Bayer denies the allegations directed at Bayer contained therein and further denies that Plaintiff is entitled to any of the relief requested.

In answer to Plaintiff's jury demand, Bayer states that no allegation is directed at Bayer and therefore no answer is required by Bayer. To the extent an answer is deemed necessary, Bayer admits that Plaintiff demands a jury trial. Except as admitted, Bayer denies any remaining allegations.

**DEFENSES**

Discovery and investigation may reveal that any one or more of the following defenses should be available to Bayer in this matter. Bayer therefore asserts said defenses in order to preserve the right to assert them. Upon completion of discovery, and if the facts warrant, Bayer may withdraw any of these defenses as may be appropriate. Further, Bayer reserves the right to amend this answer to assert additional defenses, cross-claims, counterclaims and other claims and defenses as discovery proceeds. Further answering and by way of defense, Bayer states as follows:

FIRST DEFENSE
(Failure to State a Claim)

Plaintiff's Complaint and each and every purported cause of action therein fail to state facts sufficient to constitute a cause of action against Bayer; moreover, Plaintiff's Complaint fails to state a claim for punitive damages against Bayer upon which relief can be granted.

SECOND DEFENSE
(Statute of Limitations)

With respect to each and every cause of action in Plaintiff's Complaint, all or part of Plaintiff's claims are barred by the applicable statute of limitations.

THIRD DEFENSE
(Consent/Assumption of Risk)

Plaintiff, knowing the nature and properties of the medicine(s) which are the subject matter of this action, consented to use, if any, the medicine(s), and/or assumed the risk of such use, and accordingly Bayer cannot be held liable.

FOURTH DEFENSE
(Preemption)

With respect to each and every cause of action in Plaintiff's Complaint, the acts alleged are regulated by the statutes and regulations of the federal government, which preempt all

additional or different state laws. Accordingly, the claims of Plaintiff are preempted in whole or in part by federal law pursuant to the Supremacy Clause of the United States Constitution.

FIFTH DEFENSE
(Indispensable Parties)

Plaintiff has failed to join indispensable parties required for a proper adjudication of this matter. Furthermore, in the alternative, the alleged injuries and/or losses of the Plaintiff, if any, were caused in part by the legal fault and/or negligence of parties other than Bayer, over whom Bayer had no control, and any recovery by the Plaintiff should be apportioned under Miss. Code Ann. § 85-5-7.

SIXTH DEFENSE
(Improper Joinder)

Plaintiff's Complaint is an improper joinder and an improper accumulation of parties.

SEVENTH DEFENSE
(Good Faith)

With respect to each and every purported cause of action in Plaintiff's Complaint, the acts of Bayer were at all times done in good faith and without malice.

EIGHTH DEFENSE
(Conformity with Medical Knowledge)

With respect to each and every purported cause of action in Plaintiff's Complaint, Bayer alleges that its methods, standards, and techniques in the preparation of the medicine(s) which are the subject matter of this action were and are in conformity with the generally recognized state of the medical knowledge, common and accepted procedure in the medical field, and state of the art at the time of their preparation.

NINTH DEFENSE
(Conformity with Applicable Law)

With respect to each of Plaintiff's claims, *Alka-Seltzer Plus Effervescent* medicine was prepared by Bayer and provided by Bayer, including its labels and packaging, pursuant to the approval of the appropriate federal agencies and applicable statutes and regulations; approval of preparation of said medicine was obtained in compliance with all requirements pertaining to the preparation and/or distribution of such medicine and was accomplished pursuant to acceptable standards of conduct.

TENTH DEFENSE
(No Duty to Warn)

To the extent there were any risks associated with the use of the medicine(s) which are the subject matter of this action which Bayer knew or should have known and which gave rise to a duty to warn, Bayer at all times discharged such duty through appropriate and adequate warnings in accordance with federal statutes and regulations and with the existing state of medical and scientific knowledge.

ELEVENTH DEFENSE
(Compliance with Applicable Regulations)

At all times relevant herein, any medicine(s) which are the subject matter of this action processed and distributed by Bayer in the State of Mississippi or in the United States were processed and distributed in a reasonable and prudent manner based upon available medical and scientific knowledge and further were processed and distributed in accordance with and pursuant to all applicable regulations of the federal Food and Drug Administration.

TWELFTH DEFENSE
(Public Benefit)

The public interest and benefit in the availability of such medicine(s) which are the subject matter of this action precludes liability for any risks, if any, resulting from such activities,

which were unavoidable given the state of human knowledge at the time those activities were undertaken. With respect to Plaintiff's claims, if it is determined that there is a risk inherent in any of the medicine(s) which are the subject matter of this action, then such risk, if any, is outweighed by the benefits of the medicine(s).

THIRTEENTH DEFENSE
(Protected Speech)

Bayer's advertisements and labeling with respect to the medicine(s) which are the subject matter of this action were not false or misleading and, therefore, constitute protected commercial speech under the applicable provisions of the United States and Mississippi constitutions.

FOURTEENTH DEFENSE
(No Misrepresentation)

Bayer denies any misrepresentation and/or fraud on its part, and/or reliance by Plaintiff and detriment to Plaintiff allegedly resulting therefrom.

FIFTEENTH DEFENSE
(Fair and Truthful Conduct)

The conduct and activities of Bayer with respect to the medicine(s) which are the subject matter of this action were fair and truthful based upon the state of knowledge existing at the relevant time alleged in the Plaintiff's Complaint.

SIXTEENTH DEFENSE
(Puffery Not Actionable)

To the extent Plaintiff's claims and allegations relate to mere puffery that is not misleading to a reasonable person, such claims are not actionable.

SEVENTEENTH DEFENSE
(Violation of Constitutional Rights)

To the extent that Plaintiff's claims are based on a theory providing for liability without proof of causation, the claims violate Bayer's rights under the United States Constitution and

Section 14 of the Mississippi Constitution, and Plaintiff's claims are barred by the due process provision of the Fifth and Fourteenth Amendments to the United States Constitution and similar sections of the Mississippi Constitution on the ground that Bayer will not be accorded protection against multiple suits and duplicative liability and to the extent that there has been a denial of equal protection.

EIGHTEENTH DEFENSE
(Unclean Hands)

With respect to each and every purported cause of action, Plaintiff's claims are barred by the doctrine of unclean hands.

NINETEENTH DEFENSE
(Waiver and Estoppel)

With respect to each and every purported cause of action, Plaintiff's claims are barred by the doctrine of waiver and estoppel.

TWENTIETH DEFENSE
(Laches)

Each and every cause of action asserted in the Plaintiff's Complaint is barred by the doctrine of laches.

TWENTY-FIRST DEFENSE
(Lack of Causation)

Bayer asserts that its conduct did not cause, proximately cause, solely cause, or solely proximately cause the injuries and/or damages claimed by Plaintiff, if any.

TWENTY-SECOND DEFENSE
(Intervening/Superseding Cause)

The injuries and/or damages claimed by Plaintiff, if any, resulted from an intervening and superseding cause or causes and any action on the part of Bayer was not the proximate or competent producing cause of Plaintiff's alleged injuries and/or damages, if any.

TWENTY-THIRD DEFENSE
(Unavoidable Circumstances)

The alleged injuries and/or damages of the Plaintiff, if any, were the result of unavoidable circumstances which could not have been prevented by anyone.

TWENTY-FOURTH DEFENSE
(No Negligence)

Bayer denies that it is liable for actionable negligence and denies that Plaintiff was injured thereby.

TWENTY-FIFTH DEFENSE
(Compensatory and General Damages Not Proper)

With respect to each and every cause of action, Plaintiff is not entitled to compensatory or general damages.

TWENTY-SIXTH DEFENSE
(Punitive and Exemplary Damages Not Proper)

With respect to each and every cause of action, Plaintiff is not entitled to punitive or exemplary damages. With regard to Plaintiff's claims for punitive damages, Bayer raises the following defenses, some of which are asserted in the alternative:

(a) Under no circumstances may Bayer be held derivatively liable for an award of punitive damages;

(b) Plaintiff has no basis in fact or law to assert a claim for punitive damages against Bayer;

(c) Pursuant to Miss. Code Ann. § 11-1-65(1)(a), Plaintiff must satisfy their burden of proof as to punitive damages by clear and convincing evidence;

(d) No act or omission by Bayer, if any, was done with actual malicious or gross negligence that evidences a wilful, wanton, or reckless disregard for the safety of

others. Furthermore, Bayer did not commit actual fraud. An award of punitive damages is therefore barred by Miss. Code Ann. § 11-1-65(1)(a).

Punitive damages in this case are prohibited by at least the following provisions of the United States and Mississippi Constitutions:

(a) The Due Process Clauses (including substantive and procedural) of the Fifth and Fourteenth Amendments to the United States Constitution and Article 3, Section 14, of the Mississippi Constitution;

(b) The Takings Clause of the Fifth and Fourteenth Amendments to the United States Constitution and Article 3, Section 14, of the Mississippi Constitution;

(c) The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Mississippi Constitution;

(d) The Eighth Amendment to the United States Constitution and Article 3, Section 28, of the Mississippi Constitution which prohibit among other things, excessive fines;

(e) The Fifth and Sixth Amendments to the United States Constitution which give certain rights to one accused;

(f) Article I, Section 8 of the United States Constitution which prohibits an impermissible burden on interstate commerce. Plaintiff's plea for punitive damages represents such a burden;

(g) The Supremacy Clause embodied in Article I, Section 10, Clause 1 of the United States Constitution;

(h) The Separation of Powers doctrine embodied in Article VI of the United States Constitution;

(i) The Sixth Amendment of the United States Constitution. Under this Amendment, Plaintiff's claims are void for vagueness since Bayer is not informed of the nature and cause of the accusation against it;

(j) The right to contract embodied in Article I, Section 10 of the United States Constitution, and;

(k) The right not to be exposed to double jeopardy embodied in the Fifth Amendment of the United States Constitution.

Bayer asserts that Plaintiff's claim for punitive damages is governed and limited by Miss. Code Ann. § 11-1-65, and Bayer hereby pleads and invokes the provisions of same.

TWENTY-SEVENTH DEFENSE
(Pre-Existing Condition)

Bayer asserts that the injuries and/or damages alleged by Plaintiff, if any, were the result of a pre-existing condition or conditions that were unrelated to any conduct of, or medicine placed in the stream of commerce by, Bayer and/or over which Bayer had no control.

TWENTY-EIGHTH DEFENSE
(Act of God)

The injuries and/or damages alleged by Plaintiff, if any, may have been caused, in whole or in part, by operation of nature or act of God.

TWENTY-NINTH DEFENSE
(Alteration or Misuse)

Plaintiff's alleged injuries and/or damages, if any, were caused by the alteration, unintended use, or misuse of the medicines referred to in Plaintiff's Complaint.

THIRTIETH DEFENSE
(Idiosyncratic Reaction)

With respect to each and every cause of action, Plaintiff is not entitled to recover for an idiosyncratic reaction.

THIRTY-FIRST DEFENSE
(Contributory/Comparative Negligence)

With respect to each and every cause of action, Plaintiff is not entitled to recover because of the doctrines of contributory and/or comparative negligence and comparative fault.

THIRTY-SECOND DEFENSE
(Failure to Mitigate)

With respect to each and every cause of action, Plaintiff is not entitled to recover because of failure to mitigate or minimize damages.

THIRTY-THIRD DEFENSE
(Intervening Negligence)

With respect to each and every cause of action, Plaintiff is not entitled to recover because of intervening acts and/or omissions of persons or entities other than Bayer Corporation.

THIRTY-FOURTH DEFENSE
(Unavoidably Unsafe)

With respect to each and every cause of action, Plaintiff is not entitled to recover because if the medicines were unsafe, which Bayer denies, then they were unavoidably unsafe. The apparent benefits of the medicines exceeded any apparent risk given the scientific knowledge available and the medicines marketed.

THIRTY-FIFTH DEFENSE
(No Express/Implied Warranty)

Bayer denies making any express or implied warranties to Plaintiff. In the alternative, Bayer alleges that any and all warranties that may form a basis for Plaintiff's claims were adequately disclaimed. In the alternative, Plaintiff failed to give timely notice of the breach of

warranty claims, as required by Miss. Code Ann. § 75-2-607 (3)(a) (1972), and Plaintiff is therefore bared from any recovery in this action.

THIRTY-SIXTH DEFENSE
(Sophisticated Purchaser)

Bayer hereby gives notice that to the extent the sophisticated purchaser doctrine is applicable to any of the allegations contained in the Complaint, these Defendants intend to rely upon same in defense of this action.

THIRTY-SEVENTH DEFENSE
(No Strict Liability)

With respect to each and every cause of action, Plaintiff is not entitled to recover for strict liability because Plaintiff cannot state claims sounding in strict liability because, among other things, Comments J and K to Section 402 of the Restatement (Second) of Torts relegate Plaintiff to a negligence cause of action.

THIRTY-EIGHTH DEFENSE
(Failure to Identify Manufacturer)

With respect to each and every cause of action, Plaintiff is not entitled to relief to the extent they are unable to prove the identity of the manufacturer of the precise medicines used by Plaintiff.

THIRTY-NINTH DEFENSE
(Learned Intermediary Doctrine)

Bayer asserts the application of the learned intermediary doctrine which requires that all necessary warnings and other appropriate information be delivered by the treating physician or health care provider.

FORTIETH DEFENSE
(Fundamental Fairness)

With respect to each and every cause of action, Plaintiff is not entitled to recover because of the delay and the fundamental unfairness and prejudice due to the excessive delay from the date of use of the medicine until the filing of the Complaint.

FORTY-FIRST DEFENSE
(Right to Set-Off/Credit)

To the extent Bayer and any entity or person contributed to Plaintiff's damages, if any, then Bayer asserts the application of Miss. Code Ann. § 85-5-7. In the event Bayer is found jointly or severally liable with another tortfeasor or with multiple tortfeasors, Bayer reserves its right of contribution to the extent it has to pay more than its pro rata share of the common liability consistent with provisions as set out in Miss. Code Ann. § 85-5-7. Bayer further states that it expressly reserves the right, in the event that Plaintiff settles with other Defendants, to seek a credit/set-off for any proximal negligence that may be attributed to said settling Defendant. If the jury agrees with Plaintiff's position, Bayer requests that fault be allocated to the settling Defendant. Bayer intends to rely, in part, on the witnesses and evidence produced by others, including witnesses retained by Plaintiff. Bayer reserves the right to read portions of the depositions and use evidence necessary regarding allocation of fault even if other Defendants settle before trial.

FORTY-SECOND DEFENSE
(Failure to Plead Fraud with Particularity)

Plaintiff's allegations of fraud, deceit, and fraudulent misrepresentations, are not stated with the degree of particularity required by Miss. R. Civ. P. 9(b) and should be dismissed.

FORTY-THIRD DEFENSE
(Bankruptcy)

If the Plaintiff is, was, or may become a debtor in bankruptcy, then Plaintiff's claims are barred by the doctrines of judicial and equitable estoppel, res judicata, collateral estoppel and/or waiver.

FORTY-FOURTH DEFENSE
(Improper Venue)

Venue is improper in the Circuit Court in which this action was filed.

AMENDMENTS

Bayer specifically reserves the right to amend its answer by adding defenses, counterclaims, cross-claims, or by instituting third-party actions as additional facts are obtained through further investigation and discovery.

To the extent any other defendant raises any defense or issue which would exonerate Bayer, or bar recovery against Bayer, Bayer incorporates these Answers or Defenses by reference.

WHEREFORE, Bayer prays for judgment as follows:

1. That Plaintiff is not entitled to equitable relief;
2. That Plaintiff take nothing by the Complaint;
3. For such other and further relief as the court may deem just and proper.

This 15th day of December, 2003.

Respectfully submitted,

BAYER CORPORATION

By: C Joyce Hall

C. Joyce Hall, MSB #2123
Frank A. Wood, Jr., MSB # 7361

COUNSEL:

WATKINS & EAGER PLLC
400 East Capitol Street, Suite 300 (39201)
Post Office Box 650
Jackson, Mississippi 39205
Telephone: (601) 948-6470
Facsimile: (601) 354-3623

**CERTIFICATE OF SERVICE**

I do hereby certify that I have this day forwarded via United States mail, postage prepaid, a true and correct copy of the foregoing document to:

William M. Cunningham, Jr.
Burns, Cunningham, Mackey & Fillingim, P.C.
50 St. Emanuel Street
P.O. Box 1583
Mobile, Alabama 36633
(251) 432-0612
(251) 432-0625 fax

**ATTORNEYS FOR PLAINTIFF**

York Craig, Esq.
Craig, Hester, Luke & Dodson
404 Fontaine Place, Suite 101
Ridgeland, Mississippi 39157

**ATTORNEY FOR PFIZER INC**

Donna Brown Jacobs
Butler Snow O'Mara Stevens & Cannada
P.O. Box 22567
Jackson, MS 39225

**ATTORNEY FOR WYETH**

This 15th day of December, 2003.

C. Joyce Hall

C. JOYCE HALL.

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
DEC 12 2003
J. T. NOBLIN, CLERK
By ______ Deputy

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

ROBERT JAMES NANCE PLAINTIFF(S)

VERSUS CIVIL ACTION NO. 1:03cv937GRo

WYETH, et al. DEFENDANT(S)

RULE 16.1(A) INITIAL ORDER

The above captioned cause is set for a **TELEPHONIC CASE MANAGEMENT CONFERENCE (CMC)** on February 18, 2004, at 11:00 a.m., before:

Chief Magistrate Judge John Roper
2012 15th Street
Suite 870
Gulfport, MS 39501
(228) 563-1779

**UNLESS OTHERWISE AGREED, IT SHALL BE THE RESPONSIBILITY OF COUNSEL FOR THE PLAINTIFF TO SET UP THE CONFERENCE CALL AT THE SCHEDULED TIME.**

**RULE 16.1(B)(1) ATTORNEY CONFERENCE**

No later than twenty one (21) days prior to the CMC, counsel shall confer, either in person or telephonically, regarding the following matters:

1. Identify the principal factual and legal issues in dispute;

2. Discuss the principal evidentiary basis for claims and defenses;

3. Determine the differentiated case management case track, days required for trial, and whether the case should be considered for Alternative Dispute Resolution (ADR);

4. Discuss when voluntary disclosure of documents or other information should be made pursuant to Rule 26.1 [no later than fourteen (14) days after the attorney conference, Local Rule 16.1(B)(7)];

5. Identify any motions whose early resolution would have significant impact on the scope of discovery or other aspects of the litigation;

6. Consistent with the case track recommendations, determine what additional discovery is required beyond the voluntary disclosures and initial depositions of the parties, with designated time limitations;

7. Discuss whether all parties consent to jurisdiction by a magistrate judge;

8. Discuss a time for the Local Rule 16.1(C) settlement conference;

9. Discuss settlement prospects fully with each other and their respective clients and represent to the Court that they have done so and communicate the costs of going through litigation and the appeal process with each's respective clients and represent to the Court that they have done so.

10. Discuss preparation of a proposed case management order . Scheduling deadlines based on the track designation should not be included in the proposed case management order. All deadlines shall be determined at the telephonic case management conference.

**PROPOSED CASE MANAGEMENT ORDER**
**CONFIDENTIAL SETTLEMENT MEMORANDA**

Counsel are instructed to submit a proposed case management order **by mail (NO FAXES)** to the judge no later than fourteen (14) days after the attorney conference. By the same deadline, counsel shall also submit an original and one (1) copy of a memorandum (3 page maximum) setting forth a brief explanation of the case, and a candid appraisal of the respective positions, including possible settlement figures. Counsel will also furnish in their memorandum a good faith estimate of the expense of carrying the litigation through trial and the appellate process, if not settled, and will have discussed and will represent to the Court that they have so discussed these costs with their respective clients and will be prepared to candidly discuss them with the Court. These memoranda are **not** to be exchanged and will be viewed only by the Court. These will not become a part of the record and will be destroyed upon the resolution of the case.

**CASE MANAGEMENT PLAN**

At the conference, the Court and the parties shall:

1. Identify the principal factual and legal issues in dispute;

2. Identify the alternative dispute resolution procedure which counsel intend to use, or report specifically why no such procedure would assist in the resolution of the case;

3. Indicate whether all parties consent to jurisdiction by a magistrate judge;

4. Review the parties' compliance with their disclosure obligations and consider whether to order additional disclosures;

5. Determine whether to order early filing of any motions that might significantly affect the scope of discovery or other aspects of the litigation, and provide for the staged resolution, or bifurcation of issues for trial consistent with 42(b) Fed.R.Civ.P.;

6. Determine the plan for at least the first stage of discovery; impose limitations on each discovery tool, time periods and other appropriate matters;

7. Determine the date for the Local Rule 16.1(C) settlement conference or mediation;

8. Discuss scheduling and set appropriate scheduling deadlines including dates for settlement conference, completion of discovery, motions, final pretrial conference and trial.

**CASE MANAGEMENT ORDER**

A Case Management Order shall be entered by the Court within ten (10) days of the conference. A Uniform Case Management Order has been developed and is available on the Court web site at www.mssd.uscourts.gov and as Form No. 1 in the revised Uniform Local Rules, effective December 1, 2000. Counsel shall use that format in discussions and preparation.

J. T. NOBLIN, CLERK

Date: 12-12-03 By: [signature]
Deputy Clerk

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
DEC 12 2003
J. T. NOBLIN, CLERK
BY ______ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

ROBERT JAMES NANCE

PLAINTIFF

vs.

CIVIL ACTION NO. 1:03cv937GRo

WYETH; BAYER CORPORATION;
PFIZER, INC., WARNER LAMBERT
CONSUMER HEALTHCARE

DEFENDANTS

**NOTICE OF REMOVAL**

TO: William M. Cunningham, Jr.
Burns, Cunningham, Mackey & Fillingim, P.C.
50 St. Emanuel Street
P.O. Box 1583
Mobile, Alabama 36633

Vickie Hariel, Clerk
Pearl River Circuit Clerk
200 South Main
Popularville, MS 39470

PLEASE TAKE NOTICE that Wyeth, defendant in the above styled and numbered cause, has filed this Notice of Removal, as required by law and the rules of Court, for the removal of that certain cause entitled "Robert James Nance v. Wyeth; Bayer Corporation; et al." bearing number 2003-0450 on the docket of the Circuit Court of Pearl River County, Mississippi, from that Court to the United States District Court for the Southern District of Mississippi, Southern Division.

You will, pursuant to said removal, proceed no further with this matter in the Circuit Court of Pearl River County, Mississippi. Your attention is specifically directed to Section 1441 et seq., Title 28, United States Code, as amended.

Wyeth, appearing specially and for the sole and only purpose of effecting removal to this Court, states the following as grounds for removal:

1.

Wyeth is a defendant in the previously identified civil action now pending in the Circuit Court of Pearl River County, Mississippi. The suit is an action by the plaintiff to recover for damages allegedly sustained as a result of use of certain medicines containing phenylpropanolamine (PPA).

2.

The suit was instituted on November 3, 2003, which was the date on which the Complaint was filed. The first defendant was served on November 24, 2003 so that this Notice is filed within 30 days after service of the Summons and Complaint upon the first defendant. All properly joined and served defendants consent to the removal. *See* Consents of Bayer Corporation and Pfizer, Inc. attached as Exhibit "B".

3.

A certified copy of the state court file is attached as Exhibit "A".

4.

The controversy in this action is a controversy between citizens of different states. There is complete diversity of citizenship between the plaintiff and defendants.

5.

Plaintiff is a citizen of the State of Mississippi, as set forth in the Complaint.

6.

Defendant Wyeth is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New Jersey and not in the State of Mississippi. Wyeth is, therefore, a citizen of the States of New Jersey and Delaware. Wyeth is not and was not at the time of filing a citizen of the State of Mississippi.

7.

Defendant Bayer Corporation is an Indiana corporation and has its principal place of business in Pennsylvania. Bayer Corporation is, therefore, a citizen of the States of Indiana and Pennsylvania. Bayer Corporation is not and was not at the time of filing a citizen of the State of Mississippi.

8.

Defendant Pfizer, Inc., incorrectly named in complaint as Pfizer, Inc., Warner Lambert Consumer Healthcare, is a Delaware corporation and has its principal place of business in New York. Pfizer, Inc. is, therefore, a citizen of the States of Delaware and NewYork. Pfizer, Inc. is not and was not at the time of filing a citizen of the State of Mississippi.

9.

The alleged citizenship of unknown Defendant's A-EE must be disregarded for purpose of determining whether diversity exists. See 28 U.S.C. §1441(a)("For proposes of removal under this chapter, the citizenship of Defendants sued under fictitious names shall be disregarded.")

10.

It is facially apparent from the Complaint that the amount in controversy exceeds $75,000.00 exclusive of interest and costs. Plaintiff alleges that he suffered strokes which resulted in disability. Plaintiff seeks both compensatory and punitive damages.

11

For the foregoing reasons, this Court has jurisdiction of the subject matter pursuant to Title 28, United States Code, Section 1332, as amended, and defendant Wyeth has removed this civil action to this Court from the Circuit Court of Pearl River County, Mississippi.

THIS, the 11th day of December, 2003.

Respectfully submitted,

Christy D. Jones MB #(3192)
Donna Brown Jacobs MB #(8371)

ATTORNEYS FOR WYETH

OF COUNSEL:

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
17th Floor, AmSouth
Post Office Box 22567
Jackson, Mississippi 39225-2567
(601) 948-5711

**CERTIFICATE OF SERVICE**

I, Donna Brown Jacobs, do hereby certify that I have this day forwarded via United States mail, postage prepaid, a true and correct copy of the foregoing document to:

William M. Cunningham, Jr.
Burns, Cunningham, Mackey & Fillingim, P.C.
50 St. Emanuel Street
P.O. Box 1583
Mobile, Alabama 36633

**ATTORNEY FOR PLAINTIFF**

C. Joyce Hall
WATKINS & EAGER
Suite 300 The Emporium Building
400 East Capitol Street
P.O. Box 650
Jackson, MS 39205

**ATTORNEY FOR BAYER CORPORATION**

York Craig, Esq.
Craig, Hester, Luke & Dodson
404 Fontaine Place, Suite 101
Ridgeland, Mississippi 39157

**ATTORNEY FOR PFIZER INC.**

THIS, the 11th day of December, 2003.

DONNA BROWN JACOBS

IN THE CIRCUIT COURT OF PEARL RIVER COUNTY, MISSISSIPPI

**ROBERT JAMES NANCE,**

**Plaintiff,**

vs. CASE NO.: 2003-0450

**WYETH; BAYER CORPORATION; PFIZER, INC., WARNER LAMBERT CONSUMER HEALTHCARE;** **A through G**, being those unknown individuals, partnerships, corporations, or other entities whether singular or plural who or which designed, tested, manufactured, marketed, advertised, distributed and/or sold drug(s) which contained PPA and was ingested by the Plaintiff on the occasions made the basis of this suit; **H through N**, being those unknown individuals, partnerships, corporations, or other entities who provided consulting services about the use of PPA in products designed, tested, manufactured, marketed, advertised, distributed and /or sold by other Defendants in this action; **O through R**, being those unknown individuals, partnerships, corporations, or other entities who provided recommendations for the designers, testers, manufacturers, advertisers, distributors and/or sellers of drug(s) which contained PPA and was ingested by the Plaintiff on the occasions make the basis of this suit; **S through V**, being those unknown individuals, partnerships, corporations, or other entities whether singular or plural who provided design criteria, testing services, manufacturing criteria, advertising services, distributing services, and/or sales services for the designers, testers,

FILED
NOV 03 2003
VICKIE P. HARIEL, CIRCUIT CLERK
BY ________ D.C.

[redacted]

manufacturers, advertisers, distributors and/or sellers of drug(s) which contained PPA and was ingested by the Plaintiff on the occasions make the basis of this suit; **W through EE** being those unknown individuals, partnerships, corporations, or other entities whether singular or plural and/or those entities or entity on whose behalf or whose benefit the named fictitious party Defendant or Defendants were acting on the occasions made the basis of this suit and/or those entities or entity who or which injured or contributed to the injuries of the Plaintiff. Plaintiff avers that the identity of the fictitious party Defendants are otherwise unknown to the Plaintiff at the time but whose identities will be added by amendment hereto when that information is ascertained,

**Defendants.**

**COMPLAINT**

COMES NOW the PLAINTIFF, by and through his/her undersigned counsel and makes this complaint against DEFENDANTS.

**Parties**

1. PLAINTIFF is over the age of nineteen years and is a resident of Pearl River County, Mississippi.

2. DEFENDANT, **Wyeth** is a corporation with its principal place of business at **5 Giralda Farms, Madison, NJ 07940**. At all relevant times herein, DEFENDANT was in the business of promoting, manufacturing and distributing products containing Phenylpropanolamine ("PPA"). DEFENDANT does business in Mississippi and at all

relevant times hereto, marketed, promoted, warranted and/or sold it products containing PPA in Mississippi and throughout the United States.

3. DEFENDANT, **Bayer Corporation** is a corporation with its principal place of business at **100 Bayer Road, Pittsburgh, Pennsylvania 15005-9741**. At all relevant times herein, DEFENDANT was in the business of promoting, manufacturing and distributing products containing Phenylpropanolamine ("PPA"). DEFENDANT does business in Mississippi and at all relevant times hereto, marketed, promoted, warranted and/or sold it products containing PPA in Mississippi and throughout the United States.

4. DEFENDANT, **Pfizer, Inc., Warner Lambert Consumer Healthcare,** is a corporation with its principal place of business in **201 Tabor Road, Morris Plains, New Jersey 07950**. At all relevant times herein, DEFENDANT was in the business of promoting, manufacturing and distributing products containing Phenylpropanolamine ("PPA"). DEFENDANT does business in Mississippi and at all relevant times hereto, marketed, promoted, warranted and/or sold it products containing PPA in Mississippi and throughout the United States.

5. The DEFENDANTS:

a. **A through G**, are those unknown individuals, partnerships, corporations, or other entities whether singular or plural who or which designed, tested, manufactured, marketed, advertised, distributed and/or sold drug(s) which contained PPA and was ingested by the PLAINTIFF on the occasions made the basis of this suit;

b. **H through N**, are those unknown individuals, partnerships, corporations, or

other entities who provided consulting services about the use of PPA in products designed, tested, manufactured, marketed, advertised, distributed and/or sold by other DEFENDANTS in this action;

c. **O through R,** are those unknown individuals, partnerships, corporations, or other entities who provided recommendations for the designers, testers, manufacturers, advertisers, distributors and/or sellers of drug(s) which contained PPA and was ingested by the PLAINTIFF on the occasions make the basis of this suit;

d. **S through** V, are those unknown individuals, partnerships, corporations, or other entities whether singular or plural who provided design criteria, testing services, manufacturing criteria, advertising services, distributing services, and/or sales services for the designers, testers, manufacturers, advertisers, distributors and/or sellers of drug(s) which contained PPA and was ingested by the PLAINTIFF on the occasions make the basis of this suit;

e. **W through EE** are those unknown individuals, partnerships, corporations, or other entities whether singular or plural and/or those entities or entity on whose behalf or whose benefit the named fictitious party DEFENDANTS or DEFENDANTS were acting on the occasions made the basis of this suit and/or those entities or entity who or which injured or contributed to the injuries of the PLAINTIFF.

PLAINTIFF avers that the identity of the fictitious party DEFENDANTS, **A through EE** are otherwise unknown to the PLAINTIFF at the time but whose identities will be added by amendment hereto when that information is ascertained.

6. Reference to DEFENDANTS throughout this Complaint refer to all named DEFENDANTS and all fictitious DEFENDANTS.

**Factual Allegations**

1. At all times material to this action, DEFENDANTS engaged in the designing, testing, manufacturing, marketing, advertising, distributing and/or selling of non-prescription, pharmaceutical products, including appetite suppressant products containing Phenylpropanolamine or PPA. DEFENDANTS designed, tested, manufactured, marketed, advertised, distributed and/or sold, Dimetapp Maximum Strength, Dimetapp-A Sinus, Alka-Seltzer Plus Nighttime Cold, Alka-Seltzer Plus Maximum Strength Sinus, Alka-Seltzer Plus Cold Medicine and Sinutab Sinus & Allergy 12 Hour, which contained PPA.

2. For decades, the scientific and medical communities have known that human consumption of amphetamines and other sympathomimetic drugs can cause serious, life threatening adverse health effects including damage to the cardiovascular and neurological systems. DEFENDANTS, as manufacturers and/or distributors of pharmaceutical products, knew of the dangers associated with the consumption of sympathomemetic drugs such as amphetamines and PPA and as such were fully aware of the dangers posed by the consumption of PPA. Despite this knowledge, for years, DEFENDANTS used PPA in many non-prescription over-the-counter medications. DEFENDANTS marketed and advertised their products to the general public and to the medical community as being safe and effective for its stated purposes.

3. For more than twenty years, the over the counter ("OTC") pharmaceutical

industry, including the DEFENDANTS, have been aware of reports of hemorrhagic stroke associated with the use of PPA. Furthermore, published reports of PPA use associated with hypertension (increased blood pressure) date back over thirty years.

4. By the time PLAINTIFF ingested Dimetapp Maximum Strength, Dimetapp-A Sinus, Alka-Seltzer Plus Nighttime Cold, Alka-Seltzer Plus Maximum Strength Sinus, Alka-Seltzer Plus Cold Medicine and Sinutab Sinus & Allergy 12 Hour, on or around October 9, 2000 and November 15, 2000, numerous reports of PPA-related injuries had been made to the FDA and knowledge of that information and the reasons why PPA should be removed from the marketplace were well known, or should have been, to the DEFENDANTS.

5. In March of 1993, the FDA issued a letter to the Nonprescription Drug Manufacturers Association outlining their concerns regarding the safety of PPA and informed industry that it intended to classify PPA as a Category III drug (insufficient data to assess safety). To avoid this classification, manufacturers of PPA proposed a study, which later became known as the Yale Hemorrhagic Stroke Study (or "Yale Study"), to investigate the link between PPA and strokes. While the study was ongoing, the manufacturers were able to continue selling PPA products.

6. DEFENDANTS were provided with the final results of the Yale Study, at the latest, during the May 2000 meetings with the FDA, but were also aware of the existence of that ongoing epidemiological study for years prior to that date and the concerns that existed in the medical/scientific community that PPA was associated with causing medical problems, including hemorrhagic strokes, in human beings.

7. On November 6, 2000, the summary results of the Yale Study appeared in the popular press. On December 21, 2000, the study and their results were officially published as an original, lead article in the peer-reviewed New England Journal of Medicine. Their authors concluded that the Yale Study provides strong epidemiological evidence of the association between the use of phenylpropanolamine and the risk of hemorrhagic stroke.

8. DEFENDANTS knew or should have known, about the clinical/medical association between PPA and risk of injuries to persons taking medicines containing PPA from medical periodicals and textbooks, the fifty-plus adverse event reports filed with the FDA, the Yale Study, numerous adverse reports from the Company's own records, and the pharmaceutical trade organizations.

9. DEFENDANTS were aware or should have been aware of the evidence relating PPA to potentially life threatening and fatal reactions.

10. Despite DEFENDANTS' knowledge concerning the adverse affects of PPA, DEFENDANTS continued to manufacture, market, advertise, distribute, and/or sell products containing PPA. DEFENDANTS promoted PPA products as safe and effective with little or no side effects. In addition, DEFENDANTS made no efforts to warn the general public of the dangers associated with PPA nor did DEFENDANTS take any steps to alert the medical community and inform them of the significant risks associated with PPA.

11. To the contrary, DEFENDANTS actively engaged in downplaying and minimizing any potential adverse side effects associated with the consumption of PPA. DEFENDANTS represented to the general public and to the medical community that PPA

unreasonable risk of harm to the consumer, including PLAINTIFF, and as such said consumers were unreasonably subjected to risk of injury or death from the consumption of the products.

24. Despite such knowledge, DEFENDANTS, through their officers, directors and managing agents for the purpose of self-aggrandizement and enhancing their profits, knowingly and deliberately failed to remedy the known defects in Dimetapp Maximum Strength, Dimetapp-A Sinus, Alka-Seltzer Plus Nighttime Cold, Alka-Seltzer Plus Maximum Strength Sinus, Alka-Seltzer Plus Cold Medicine and Sinutab Sinus & Allergy 12 Hour, and failed to warn the public, including PLAINTIFF of the serious risks of injury occasioned by the defects inherent in the products. The DEFENDANTS and their officers, directors and managing agents intentionally proceeded with the manufacturing, sale and marketing of Dimetapp Maximum Strength, Dimetapp-A Sinus, Alka-Seltzer Plus Nighttime Cold, Alka-Seltzer Plus Maximum Strength Sinus, Alka-Seltzer Plus Cold Medicine and Sinutab Sinus & Allergy 12 Hour, knowing persons would be exposed to serious potential danger in order to advance their own pecuniary interest. DEFENDANTS conduct was wanton and wilful and displayed a conscious disregard for the safety of the public and particularly of PLAINTIFF, entitling PLAINTIFF to exemplary damage. PLAINTIFF asserts and alleges all rights and remedies under Miss. Code Ann. § 11-1-63 et. seq.

WHEREFORE, PLAINTIFF demands judgment against all DEFENDANTS jointly and severally, for all compensatory and punitive damages that are due plus interest and costs of this action.

**COUNT TWO**

**(BREACH OF EXPRESS AND IMPLIED WARRANTIES)**

25. PLAINTIFF incorporate by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

26. At the time and place of the sale, distribution and supply of said Dimetapp Maximum Strength, Dimetapp-A Sinus, Alka-Seltzer Plus Nighttime Cold, Alka-Seltzer Plus Maximum Strength Sinus, Alka-Seltzer Plus Cold Medicine and Sinutab Sinus & Allergy 12 Hour, DEFENDANTS expressly represented and warranted that the products were safe, and impliedly warranted that the products were reasonably fit for their intended purpose, and were of marketable quality. In fact, however, the products were unfit and unsafe for ingestion by users.

27. At the time and place of manufacture and sale of Dimetapp Maximum Strength, Dimetapp-A Sinus, Alka-Seltzer Plus Nighttime Cold, Alka-Seltzer Plus Maximum Strength Sinus, Alka-Seltzer Plus Cold Medicine and Sinutab Sinus & Allergy 12 Hour, the products were not reasonably fit or safe for their intended purpose and, therefore, were not of marketable quality, and potentially constituted an extreme hazard and danger to persons using said product. DEFENDANTS breached these warranties by failing to warn of known or readily ascertainable risks associated with Dimetapp Maximum Strength, Dimetapp-A Sinus, Alka-Seltzer Plus Nighttime Cold, Alka-Seltzer Plus Maximum Strength Sinus, Alka-Seltzer Plus Cold Medicine and Sinutab Sinus & Allergy 12 Hour.

28. As a result of said breaches, PLAINTIFF sustained the injuries and damages

as herein alleged.

WHEREFORE, PLAINTIFF demands judgment against the DEFENDANTS for damages that are due plus interest and costs of this action.

## COUNT THREE

## (FOR NEGLIGENCE)

29. PLAINTIFF incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

30. At all times herein mentioned, DEFENDANTS had a duty to make and sell reasonably safe and appropriate products, and not make and sell products that were not safe, proper, and appropriate for their intended purpose, consumption. Further, DEFENDANTS had a duty to warn PLAINTIFF of dangers associated with the products that the DEFENDANTS knew or should have known. Instead, DEFENDANTS deliberately withheld issuing warnings about the known risk of hemorrhagic strokes.

31. DEFENDANTS breached their duties to PLAINTIFF, thereby causing the injuries and damages as described herein, in that, and not by way of limitation, they did not warn of the known risks associated with the use of Dimetapp Maximum Strength, Dimetapp-A Sinus, Alka-Seltzer Plus Nighttime Cold, Alka-Seltzer Plus Maximum Strength Sinus, Alka-Seltzer Plus Cold Medicine and Sinutab Sinus & Allergy 12 Hour and did not exercise an acceptable standard of care, i.e., what a reasonably prudent manufacturer or seller would have known and warned about; moreover, the product lacked sufficient warnings of the hazards and dangers to users of said products, and failed to provide safeguards to prevent the

injuries sustained by PLAINTIFF. DEFENDANTS failed to properly and timely test Dimetapp Maximum Strength, Dimetapp-A Sinus, Alka-Seltzer Plus Nighttime Cold, Alka-Seltzer Plus Maximum Strength Sinus, Alka-Seltzer Plus Cold Medicine and Sinutab Sinus & Allergy 12 Hour prior to their sale, and as a result subjected users to an unreasonable risk of injury when used as directed and recommended. As a result of the negligence of DEFENDANTS, PLAINTIFF sustained the injuries and damages as herein alleged.

WHEREFORE, PLAINTIFF demands judgment against the DEFENDANTS for damages that are due plus interest and costs of this action.

**COUNT FOUR**

**(WANTONNESS)**

32. PLAINTIFF incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

33. PLAINTIFF adopts and reasserts here COUNT THREE in full except that PLAINTIFF substitutes the word "wanton" for the word "negligent" and the word "WANTONNESS" for the word "negligence".

WHEREFORE, PLAINTIFF demands judgment against the DEFENDANT for all compensatory and punitive damages that are due plus interest and costs of this action.

**COUNT FIVE**

**(FRAUDULENT MISREPRESENTATION; SUPPRESSION; CONCEALMENT; AND DECEIT)**

34. PLAINTIFF incorporates by reference each and every paragraph of this

complaint as though set forth in full in this cause of action.

35. DEFENDANTS, from the time that the aforementioned products were first manufactured and marketed, and up to the present time, willfully deceived consumers, including PLAINTIFF, by concealing from him the truth concerning Dimetapp Maximum Strength, Dimetapp-A Sinus, Alka-Seltzer Plus Nighttime Cold, Alka-Seltzer Plus Maximum Strength Sinus, Alka-Seltzer Plus Cold Medicine and Sinutab Sinus & Allergy 12 Hour which the DEFENDANTS, as manufacturers and distributors of the products, had a duty to disclose.

36. DEFENDANTS represented as a fact to consumers including PLAINTIFF that the subject products were safe when DEFENDANTS had no knowledge to believe it to be true and had no reasonable basis for believing it to be true.

37. At all times relevant herein, DEFENDANTS conducted a sales and marketing campaign to promote the sale of the aforementioned Dimetapp Maximum Strength, Dimetapp-A Sinus, Alka-Seltzer Plus Nighttime Cold, Alka-Seltzer Plus Maximum Strength Sinus, Alka-Seltzer Plus Cold Medicine and Sinutab Sinus & Allergy 12 Hour, and willfully deceived PLAINTIFF and the general public as to the health risks of hemorrhagic stroke when using the aforementioned products and as to the availability of sale of safe alternative products. DEFENDANTS were aware that the aforementioned products were not safe, fit or effective for human consumption, but rather that the use of said products were hazardous to the user's health, including but not limited to the injuries suffered by PLAINTIFF as described herein.

**THE DEFENDANTS WILL BE SERVED VIA CERTIFIED MAIL AS FOLLOWS:**

Wyeth
5 Giralda Farms
Madison, NJ 07940

Bayer Corporation
c/o CT Corporation System
631 Lakeland Drive
Flowood, MS 39232

Pfizer, Inc., Warner Lambert Consumer Healthcare
201 Tabor Road
Morris Plains, NJ 07950

I certify this is a true and correct copy of the original on file in my office.
This the 1st day of December 2003
VICKIE P. HAMEL, Circuit Clerk
BY M. Hogan D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

ROBERT JAMES NANCE

PLAINTIFF

VS.

CIVIL ACTION NO. _______________

WYETH; BAYER CORPORATION;
PFIZER, INC., WARNER LAMBERT
CONSUMER HEALTHCARE

DEFENDANTS

**CONSENT OF DEFENDANT BAYER CORPORATION TO REMOVAL**

Defendant BAYER CORPORATION, through counsel, hereby specially appears for the sole purpose of consenting to removal of this action, which was pending as "Robert James Nance v. Wyeth, Bayer Corporation, et. al." and bearing number 2003-0450 on the docket of the Circuit Court of Pearl River County, Mississippi, and joins in the Notice of Removal filed herein by defendant Wyeth.

THIS, the 11th day of December, 2003.

Respectfully submitted,

BAYER CORPORATION

C. JOYCE HALL

OF COUNSEL:

WATKINS & EAGER
Suite 300 The Emporium Building
400 East Capitol Street
P.O. Box 650
Jackson, MS 39205

**CERTIFICATE OF SERVICE**

I, C. Joyce Hall, do hereby certify that I have this day forwarded via United States mail, postage prepaid, a true and correct copy of the foregoing document to:

William M. Cunningham, Jr.
Burns, Cunningham, Mackey & Fillingim, P.C.
50 St. Emanuel Street
P.O. Box 1583
Mobile, Alabama 36633

**ATTORNEY FOR PLAINTIFF**

Donna B. Jacobs
BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
17th Floor, AmSouth
Post Office Box 22567
Jackson, Mississippi 39225-2567

**ATTORNEY FOR WYETH**

York Craig, Esq.
Craig, Hester, Luke & Dodson
404 Fontaine Place, Suite 101
Ridgeland, Mississippi 39157

**ATTORNEY FOR PFIZER INC.**

THIS, the 11th day of December, 2003.

C. Joyce Hall

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

ROBERT JAMES NANCE

PLAINTIFF

vs.

CIVIL ACTION NO. ______________

WYETH; BAYER CORPORATION;
PFIZER, INC., WARNER LAMBERT
CONSUMER HEALTHCARE

DEFENDANTS

**CONSENT OF DEFENDANT PFIZER, INC. TO REMOVAL**

Defendant PFIZER, INC., through counsel, hereby specially appears for the sole purpose of consenting to removal of this action, which was pending as "Robert James Nance v. Wyeth, Bayer Corporation, et. al." and bearing number 2003-0450 on the docket of the Circuit Court of Pearl River County, Mississippi, and joins in the Notice of Removal filed herein by defendant Wyeth.

THIS, the 11th day of December, 2003.

Respectfully submitted,

PFIZER, INC.

C. York Craig, Jr.
YORK CRAIG, JR.
by Dana Brown Jacobs w/ permission

OF COUNSEL:

CRAIG, HESTER, LUKE & DODSON
404 Fontaine Place, Suite 101
Ridgeland, Mississippi 39157

**CERTIFICATE OF SERVICE**

I, York Craig, Jr, do hereby certify that I have this day forwarded via United States mail, postage prepaid, a true and correct copy of the foregoing document to:

William M. Cunningham, Jr.
Burns, Cunningham, Mackey & Fillingim, P.C.
50 St. Emanuel Street
P.O. Box 1583
Mobile, Alabama 36633

**ATTORNEY FOR PLAINTIFF**

C. Joyce Hall
WATKINS & EAGER
Suite 300 The Emporium Building
400 East Capitol Street
P.O. Box 650
Jackson, MS 39205

**ATTORNEY FOR BAYER CORPORATION**

Donna Brown Jacobs
BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
17th Floor Amsouth Plaza
P.O. Box 22567
Jackson, MS 39225-2567

**ATTORNEY FOR WYETH**

THIS, the 11th day of December, 2003.

C. York Craig, Jr.
YORK CRAIG, JR.
by Donna Brown Jacobs w/ permission

JACKSON 829677v1